IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LISA D. WORKMAN, | ) | |
| | ) | |
| Plaintiff, | ) | 8:09CV167 |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM AND ORDER** |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff, Lisa Workman ("Workman"), claims in this Social Security appeal that the Commissioner's decision to deny her supplemental security income ("SSI") is contrary to law and not supported by substantial evidence. The Commissioner's decision will be affirmed.

## I. Background

On February 28, 2006, Plaintiff protectively filed an application for SSI under Title XVI alleging that she was disabled due to bipolar disorder and attention deficit hyperactivity disorder ("ADHD"). Workman's application was denied initially and on reconsideration, and she appealed its denial to an administrative law judge ("ALJ").

An administrative hearing was held on July 21, 2008. Workman was present at the hearing with her attorney and testified. Steven H. Kuhn, a vocational expert, testified at the hearing by telephone.

The ALJ issued an unfavorable decision on November 18, 2008, concluding

that Workman is not disabled within the meaning of the Social Security Act. (Tr. 10-22.) In his decision, the ALJ evaluated Workman's disability claim by following the five-step sequential analysis prescribed by the Social Security Regulations.[1] *See* 20 C.F.R. §§ 404.1520 and 416.920. In doing so, the ALJ found as follows:

1. Workman has not engaged in substantial gainful activity since February 28, 2006, the application date. (Tr. 15.)

2. Workman has the following severe impairments: dysthymia; bipolar affective disorder; alcohol abuse, intermittent, episodic; and marijuana dependence. These impairments interfere more than minimally with her ability to perform basic work-related activities and are therefore severe impairments. Workman also alleges disability due to attention deficit hyperactivity disorder and the record reflects Workman is obese at five feet, five inches tall and 197 pounds. However, these are non-severe impairments as the evidence does not establish that they significantly

---

[1] The Social Security Administration uses a five-step process to determine whether a claimant is disabled. These steps are described as follows:

> At the first step, the claimant must establish that he has not engaged in substantial gainful activity. The second step requires that the claimant prove he has a severe impairment that significantly limits his physical or mental ability to perform basic work activities. If, at the third step, the claimant shows that his impairment meets or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits. If the claimant cannot carry this burden, however, step four requires that the claimant prove he lacks the RFC to perform his past relevant work. Finally, if the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform.

*Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006).

2

       affect her ability to perform basic work-related activities. (Tr. 15.)

3. Workman does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P. Appendix 1. (Tr. 15.)

4. Workman has the residual functional capacity to perform a full range of work at all exertional levels, but has nonexertional limitations. She can understand, remember, and carry out short and simple instructions. She can make judgments on short and simple instructions. She can understand or remember complex instructions, but her ability to carry out complex instructions and make judgments on complex work related decisions is limited due to her difficulty with interpersonal relationships as specifically set out in the hypothetical to the vocational expert and examples given in the recorded hearing transcript. Workman is unable to respond appropriately to usual work situations because she has difficulty interacting with co-workers and the public, which makes her hesitant to accept the opinions of others and prevents her from being able to work in jobs requiring team work. (Tr. 16.)

5. Workman is unable to perform any past relevant work. (Tr. 21.)

6. Workman was born on October 26, 1981, and was 24 years old, which is defined as a younger person on the date the application was filed. (Tr. 21.)

7. Workman has a limited education and is able to communicate in English. (Tr. 21.)

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Workman is not disabled, whether or not she has transferable job skills. (Tr. 21.)

9. Considering Workman's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Workman can perform. (Tr. 21.)

  10. Workman has not been under a disability, as defined in the Social Security Act, since February 28, 2006, the date the application was filed. (Tr. 22.)

## II. Discussion

A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole. *Hogan v. Apfel*, 239 F.3d 958, 960 (8th Cir. 2001). "Substantial evidence" is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *Id.* at 960-61; *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence supports a contrary outcome. *See Moad v. Massanari*, 260 F.3d 887, 890 (8th Cir. 2001).

  This court must also review the decision of the Commissioner to decide whether the proper legal standard was applied in reaching the result. *Smith v. Sullivan*, 982 F.2d 308, 311 (8th Cir. 1992). Issues of law are reviewed de novo. *Olson v. Apfel*, 170 F.3d 820, 822 (8th Cir. 1999); *Boock v. Shalala*, 48 F.3d 348, 351 n.2 (8th Cir. 1995).

Workman's primary argument on appeal is that the ALJ improperly evaluated the opinions of her treating advanced practice registered nurses, Kathleen Bickerstaff ("Bickerstaff") and Dan Brune ("Brune"). (Filing 17, Pl.'s Br. Supp. Mot. Summ. J., at CM/ECF pp. 15-19.) Bickerstaff and Brune have each opined that Workman is unable to sustain any type of employment. (Tr. 228, 296.) Workman maintains that by failing to afford proper weight to Bickerstaff and Brune's opinions, the ALJ

improperly formulated her RFC.[2] Workman's argument is without merit.

Two types of sources may be used to establish an impairment or the severity of an impairment: "acceptable medical sources" and "other sources." *See* 20 C.F.R. § 404.1513(a) & (d). Only "acceptable medical sources" can be considered treating sources whose medical opinions may be entitled to controlling weight. SSR 06-03p. Nurse practitioners are not acceptable medical sources, but are "other" medical sources whose information the ALJ must consider in assessing the severity of a claimant's impairment. 20 C.F.R. § 404.1513(d).

The ALJ clearly considered Bickerstaff and Brune's opinions and treatment notes as required by the regulations. In his decision, the ALJ noted Bickerstaff's opinion and explicitly stated that he had considered it in accordance with § 20 C.F.R. § 416.913 and SSR 06-03p. (Tr. 18.) The ALJ also stated that although Bickerstaff was not an acceptable medical source, her reports were probative. (*Id.*) The ALJ then gave specific reasons for discrediting Bickerstaff's reports, including: (1) that her conclusions did not describe, and her treatment notes failed to consider, any drug use; (2) she did not explain her conclusions that Workman had "marked" limitations; and (3) she failed to provide any specific functional limitations or relevant evidence to support her conclusions. (*Id.*) The ALJ similarly discussed and discredited Brune's assessment. (Tr. 17, 18.)

Workman appears to argue that Bickerstaff and Brune rise to the level of "treating sources" for evidentiary purposes and, therefore, their opinions should have

---

[2] RFC, or "residual functional capacity," is what the claimant is able to do despite limitations caused by all of the claimant's impairments. *Lowe v. Anfel*, 226 F.3d 969, 972 (8th Cir. 2000) (citing 20 C.F.R. § 404.1545(a)). The ALJ concluded that, based on her RFC, Workman is able to perform work existing in significant numbers in the national economy, including the positions of assembler, packaging machine operator and maid. (Tr. 21-22, 341-43.)

5

been given more weight. While nurse practitioners are generally not recognized as treating sources, courts have given them treating source status when they work with an acceptable medical source as a team. See *Shontos v. Barnhart*, 328 F.3d 418, 421 (8th Cir. 2003) (considering a nurse practitioner a treating source who worked within a team that included an acceptable medical source). However, as noted by the ALJ, although Bickerstaff and Brune's reports were countersigned by physicians, the record does not reflect that these physicians engaged in consistent contact with Workman or participated in her therapy or treatment. (Tr. 18.) In other words, the record does not reflect that Bickerstaff or Brune worked in a team with acceptable medical sources. Therefore, neither Bickerstaff nor Brune's opinion was entitled to significant weight. See *Lacroix v. Barnhart,* 465 F.3d 881, 885-86 (8th Cir.2006) (holding neither social worker nor nurse practitioner could be considered a treating source because record contained no reports or involvement by an acceptable medical source); *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir.2006) (explaining licensed social worker could not be given treating source status because he was not associated with a physician, psychologist, or other acceptable medical source).

In any event, even if Bickerstaff and Brune had been considered treating sources, there is other evidence of record which adequately supports the ALJ's decision. Specifically, there are numerous inconsistencies between Workman's alleged disabilities, the medical evidence, her treatment and her daily activities. These inconsistencies provide a substantial basis upon which to discount Bickerstaff and Brune's opinions and, in addition, cast serious doubt upon Workman's credibility. See *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) (stating that in order for a treatment physician's opinion to have controlling weight, it must not be inconsistent with the other substantial evidence in the case record); *Goff v. Barnhart,* 421 F.3d 785, 790-91 (8th Cir. 2005) (stating that "an appropriate finding of inconsistency with other evidence alone is sufficient to discount [a medical] opinion.").

6

Workman contends that she is unable to deal with people, sometimes neglects her personal hygiene and has to have her children in daycare because she cannot care for them herself. (Tr. 67, 86, 103.) However, as noted by the ALJ, Workman admits that she visits family members, participates in a weekly bowling league, refuses to give-up playing bar poker and is able to drive, grocery shop, exercise, perform household chores, run errands and supervise and play with her children. (Tr. 77-81, 236-37.) Moreover, there is evidence indicating that Workman's condition improves with medical care, but, despite this, Workman has occasionally refused to comply with treatment. Workman's noncompliance with medical treatment casts further doubt upon her credibility. (Tr. 77-81, 236-37, 255-266.) *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility").

The ALJ is responsible for deciding questions of fact, including the credibility of a claimant's subjective testimony about his or her limitations. *See Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." *Id.* at 714. In this case, the ALJ pointed to substantial evidence in the record supporting her decision to discount Workman's subjective allegations.

Workman also argues that the ALJ inappropriately used evidence of her alcohol and drug use as a reason to reject her credibility. (Filing 17, Pl.'s Br. Supp. Mot. Summ. J., at CM/ECF p. 20.) Workman maintains that by doing so, the ALJ misapplied the rules for structuring the analysis of whether substance use is material

7

to the underlying disability.[3] However, it is apparent from the ALJ's decision that, even with her substance abuse, Workman would not be considered disabled. (Tr. 20.) Therefore, the court finds no merit to this argument.

For the reasons stated, and after careful consideration of each argument presented in Workman's brief, I find that the Commissioner's decision is supported by substantial evidence on the record as a whole and is not contrary to law.

Accordingly,

IT IS ORDERED that judgment shall be entered by separate document providing that the decision of the Commissioner is affirmed.

March 19, 2010.

BY THE COURT:
*Richard G. Kopf*
United States District Judge

---

[3] If it is determined, after reviewing the five-step sequential analysis, that the claimant is disabled, but there is medical evidence of a substance use disorder, the ALJ must determine whether the substance use disorder is a contributing factor material to the determination of disability. If the substance abuse is found to be a material contributing factor, the claimant is not disabled for purposes of the Social Security Act. *See* 42 U.S.C. § 423(d)(2)(c); 42 U.S.C. § 1382(c).

---

\* This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.